**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x

ORACLE CORPORATION,

                          Petitioner,

          -against-

FELICIA WILSON, an Individual,

                      Respondent.

Case No. _____

-------------------------------------------------------------- x


**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**PETITION TO VACATE ARBITRATION AWARD**



Christopher J. Collins, Esq.
SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 654-3089
Facsimile:   (212) 653-8701
ccollins@sheppardmullin.com
*Attorneys for Petitioner*

Petitioner Oracle Corporation ("Petitioner" or "Oracle"), by and through its undersigned attorneys, Sheppard, Mullin, Richter & Hampton, LLP, respectfully submits this memorandum of law in support of its Petition to vacate an arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10 and 12.

## PRELIMINARY STATEMENT

This is an action pursuant to the FAA to vacate an arbitration award (the "Award") issued against Oracle in an arbitration commenced against it, in New York City, by Respondent Felicia Wilson ("Respondent" or "Wilson").  Wilson is a current Oracle sales representative, and she alleged in the arbitration that her commissions were incorrectly calculated in breach of a written compensation agreement.  As explained more fully below, the Arbitrator issued the Award without any discovery, without conducting an evidentiary hearing, and without affording Oracle the opportunity to present "evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).

At the outset of the arbitration, Oracle filed a Motion to Dismiss in accordance with the rules of the arbitral forum (JAMS).  In its Motion, Oracle argued that the terms of Wilson's compensation agreement precluded her claims, as a matter of law, because her commissions were calculated in accordance the express terms of that agreement.  Only one of two outcomes should have resulted from this Motion to Dismiss:  (i) if the motion were granted, the arbitration would be dismissed; (ii) if the motion were denied, the parties would proceed to discovery followed by an evidentiary hearing on the disputed facts, in accordance with JAMS procedures. The Arbitrator did neither.  Rather, in response to Oracle's Motion to Dismiss, she issued a final Award against Oracle, relying on extra-contractual parol evidence – including oral statements

Wilson made during the oral argument on Oracle's Motion to Dismiss –without conducting an evidentiary hearing.  This constitutes grounds for vacatur under the FAA, 9 U.S.C. § 10(a)(3).

Separate from these fundamental procedural defects and the failure to afford Oracle even minimal due process, the Arbitrator refused to apply a contract provision because she found it to be "draconian" and "manifestly unfair."  She neither interpreted nor applied the parties' agreement; rather, she re-wrote the agreement by striking a contractual term based on her own personal sense of equity.  In so doing, the Arbitrator manifestly disregarded the terms of the parties' agreement, which constitutes independent grounds for vacatur under the principle articulated by the Second Circuit in *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997) and its progeny.

## BACKGROUND

Oracle is a corporation organized under the laws of Delaware with a principle place of business in Redwood City, California. Wilson is an Oracle employee who  resides in Westchester County, New York, within the Southern District of New York.  At all relevant times, Oracle employed Wilson as a salesperson.  In this positon, she sold Oracle software products and services to Oracle business customers, and was paid commission on those sales calculated in accordance with a formula set forth in her Individualized Compensation Plan.  (*See* Award, pp. 1-2, attached to the Petition, and the Declaration of Christopher J. Collins ("Collins Decl.") as Ex. 6).

In connection with her employment with Oracle, Wilson signed an Employment Agreement & Mutual Agreement to Arbitrate (the "Arbitration Agreement") (Collins Decl. Ex. 1).  With certain exceptions not relevant here, the Arbitration Agreement required Wilson to submit all "claims arising out of or related to your Oracle employment" to arbitration.  It further provided that "The arbitration proceedings shall be conducted pursuant to the Federal Arbitration

Act, and in accordance with . . . the Employment Arbitration Rules and Procedures adopted by Judicial Arbitration & Mediation Services ('JAMS')."  (Id.).

In December 2015, Wilson commenced an arbitration proceeding against Oracle with JAMS in accordance with the Arbitration Agreement, and subsequently submitted a Statement of Claim alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing.  (Collins Decl. ¶ 4 & Ex. 2).  Wilson's claims were based on Oracle's alleged failure to pay her the full amount of commissions she believed she was entitled to in connection with Oracle's licensing of software to an Oracle customer, Pearson, Inc.  (Id.)

On May 20, 2016, Oracle filed in the arbitration a Motion to Dismiss Based on Express Contractual Terms, pursuant to Rule 18 of JAMS's Employment Arbitration Rules and Procedures, which permits summary disposition.  (Attached to the Collins Declaration are copies of Oracle's Motion to Dismiss (Exhibit 3), Wilson's Opposition to the Dismissal Request of Oracle (Exhibit 4), and Oracle's Reply in Support of its Motion to Dismiss (Exhibit 5)).

Oracle's Motion to Dismiss argued that Wilson's commissions were properly calculated according to the express terms of her Individualized Compensation Plan.  (Collins Decl. Ex. 3). That Plan (attached to the Award (Collins Decl. Ex. 6)) provided for several different commission rates applicable to Wilson's sales revenue (with higher commission rates triggered as revenue increased).  The key provision, however, was the following:  "Commission for any sales credit from a single customer in excess of 250% of quota in the given fiscal year will be calculated at 0.2% of the tier 1 rate" (the "Single Customer Provision").  At issue in the arbitration were commissions due to Wilson on revenue generated from the sale to Pearson, Inc. (a single customer) in excess of 250% of Wilson's sales quota which, Oracle contended, triggered application of the Single Customer Provision.  The gravamen of Oracle's motion was

that this contract language, on its face and without resort to parol evidence, precluded Wilson's breach of contract claim  as a matter of law.  (Collins Decl. Ex. 3, pp. 5-9).

In opposition to Oracle's motion, Wilson argued that the Single Customer Provision did not apply because "1) Pearson is not a single customer, for purposes of these transactions; 2) Oracle can show no quota at all, and therefore no limit to commissions on Sales Credit exceeding 250% of that non-existent quota; and 3) the term 'tier 1 rate' is, at best ambiguous, and would require parol [evidence] for construction, if it is applicable at all."  (Collins Decl. Ex. 4, p. 3).

On August 30, 2016, the Arbitrator heard oral argument on Oracle's Motion to Dismiss. Several days before the oral argument, however, Wilson's counsel asked the Arbitrator to compel witnesses to testify at the oral argument.  The Arbitrator denied this request, ruling that she would hear argument from attorneys at the oral argument, but not testimony from witnesses. She further explained that, if she denied the motion, an evidentiary hearing would be scheduled at which witnesses could testify.  (Collins Decl. ¶ 8).  Nevertheless, as the Award reflects, at the oral argument the Arbitrator asked questions of Wilson, who attended the argument.  (Award, p. 3).  Oracle had no advance notice that, contrary to her ruling a few days earlier, the Arbitrator was going to hear unsworn testimony from Wilson at the oral argument.[1]

### THE ARBITRATION AWARD

On November 1, 2016, JAMS electronically served the parties with the Arbitrator's Award (Collins Decl. Ex. 6, also attached to the Petition).  The Award denied Oracle's Motion to

---

[1]    During a subsequent conference call with the Arbitrator, Oracle reiterated the point of its Motion to Dismiss – that the express language of Wilson's Individualized Compensation Plan precluded her breach of contract claim, as a matter of law, and that parol evidence could not vary the express contract terms. Oracle chose not to cross examine Wilson, and allowed the Arbitrator to consider Wilson's unsworn statements at the oral argument for purposes of deciding whether there was an issue of fact warranting denial of Oracle's Motion to Dismiss.  Yet, Oracle never waived its right to an evidentiary hearing in the event its motion were denied.  (Collins Decl. ¶ 9).  The Award does not reflect otherwise.

Dismiss, but simultaneously ruled in Wilson's favor, ultimately and finally, on the merits of her claims, and did so without permitting discovery or conducting an evidentiary hearing.

Especially problematic, the Award credited Wilson's testimony regarding certain "assurances" she purportedly received from her supervisors – without hearing rebuttal evidence from Oracle.  Moreover, the Arbitrator found that Oracle's denial of Wilson's request for an exception to the Single Customer Provision (via a "CERT application") was "incompressible and contrary to rational business practices" – without permitting Oracle the opportunity, if its motion were denied, to explain why it denied Wilson's CERT application.

In sum, the following is evident from the face of the Award:

a. The Award was issued in response to Oracle's "Motion to Dismiss."  (Award, p. 2-3).

b. The Arbitrator asked questions of Wilson during the oral argument on Oracle's Motion to Dismiss, because Wilson happened to be present at the oral argument, and then considered Wilson's unsworn responses in issuing the Award.  (Award, p. 3).

c. The Arbitrator concluded that Wilson "was entitled to rely on the assurances and guidance of her supervisors and should not be penalized for doing so" without hearing evidence from Oracle regarding those purported "assurances and guidance."  The Arbitrator only considered Wilson's unrebutted statements about those "assurances and guidance" at the oral argument.  (Award, p. 3).

d. The Arbitrator found it "incomprehensible and contrary to rational business practices" for Oracle's management to have denied Wilson's request for an exception to the Single Customer Provision (the CERT application) without hearing any testimony from Oracle witnesses as to why the application was denied.  (Award, p. 4).

Apart from these fundamental procedural defects, the Award refused to apply a contract term (the Single Customer Provision) because, in the Arbitrator's view, it would be "manifestly unfair" to do so.  (Award, p. 4).  Importantly, the Arbitrator did not adopt any of the three interpretations of the Single Customer Provision argued by Wilson in opposition to Oracle's Motion to Dismiss – she rejected one and ignored the other two.  Rather, she accepted Oracle's

interpretation of the Single Customer Provision, but refused to apply it because, in her view, it was "draconian" and "manifestly unfair."  (Id.)  Thus, the Arbitrator effectively re-wrote the parties' agreement to strike a provision governing the calculation of commissions that she viewed as unfair, decided that Wilson's commissions should be calculated differently, and reached this conclusion by considering evidence outside of the four corners of the contract, and by applying her own personal sense of fairness and equity.

## ARGUMENT

I.   **The FAA Standards for Vacating an Arbitration Award**

Section 10 of the Federal Arbitration Act ("FAA""), 9 U.S.C. § 1 *et seq.*, enumerates four grounds upon which a court may vacate an arbitration award:

(1)   where the award was procured by corruption, fraud, or undue means;

(2)   where there was evident partiality or corruption in the arbitrators, or either of them;

(3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Most relevant here is the provision allowing a Court to vacate an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).

In addition, in contract dispute cases decided in arbitration, an arbitrator's award may be vacated where it is "in manifest disregard of the terms of the [parties'] agreement." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997); *see also Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 222 (2d Cir. 2002)  ("vacatur for manifest disregard

of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract.").

As explained below, FAA § 10(a)(3) and the "manifest disregard of the parties' agreement" standard each provides independent grounds for vacating the Award.

## II.    The Award Should be Vacated Because the Arbitrator Refused to Hear Evidence Pertinent and Material to the Controversy (9 U.S.C. § 10(a)(3))

As explained above, under the FAA, an arbitration award may be vacated where an arbitrator "refus[es] to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).  Under this standard, an arbitrator "need not follow all the niceties observed by the federal courts," but nonetheless "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument."  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (internal quotations omitted).  Although judicial review is limited to determining "whether the procedure was fundamentally fair," where "the arbitrator refuses to hear pertinent and material evidence to the prejudice of one of the parties, the arbitration award may be set aside."  *Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F. Supp. 52, 54 (S.D.N.Y. 1997); *see also National Football League Mgmt. Counsel v. National Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *Tempo Shain*).

In this case, Oracle was denied the ability to present evidence pertinent and material to the controversy because the Arbitrator ruled in Wilson's favor without permitting discovery or conducting an evidentiary hearing.  The Arbitrator did so on Oracle's Motion to Dismiss based on extra-contractual evidence (including Wilson's "testimony" at the oral argument) which Oracle had no opportunity to rebut at an evidentiary hearing conducted in accordance with JAMS procedures.  The Arbitrator was, of course, perfectly within her authority to deny Oracle's

motion and schedule an evidentiary hearing on disputed factual issues.  However, it was a clear violation of basic due process, and FAA standards, for the Arbitrator to rule, ultimately and finally, in Wilson's favor on Oracle's Motion to Dismiss without allowing discovery or conducting an evidentiary hearing.

The Arbitrator's conduct also violated JAMS's own procedural rules.  Those rules provide for pre-hearing exchange of information and an evidentiary hearing at which the arbitrator shall "consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate [and] may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence." (JAMS Employment Arbitration Rules and Procedures, Rules 17 & 22, attached to the Collins Decl., Exs. 7 & 8).  Importantly, JAMS Rule 22(d) provides that an arbitrator "may limit testimony to exclude evidence that would be immaterial or unduly repetitive, *provided that all Parties are afforded the opportunity to present material and relevant evidence*" (emphasis added).  These were the rules that Wilson and Oracle agreed to in the Arbitration Agreement, but the Award entirely eschewed them.

JAMS rules, of course, reflect the grounds for vacatur under FAA § 10(a)(3), which provides that an arbitration award may be vacated if an arbitrator "refus[es] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).  In this case, the Arbitrator's failure to allow for discovery or conduct an evidentiary hearing violated both JAMS arbitration rules *and* the FAA requirement that arbitration procedures adhere to principles of fundamental fairness.  Accordingly, vacatur of the Award is warranted.

The Second Circuit's decision in *Tempo Shain Corp.*, is particularly instructive.  120 F.3d 16.  That case involved a fraudulent inducement claim in which one party, but not the other, was

permitted to present evidence of the alleged fraudulent representations.  The Second Circuit

vacated the award, because "appellees' unsupported oral testimony concerning such

representations was unrebutted because Pollock, who allegedly made the representations, on

[appellant's] behalf, was not allowed to testify."  *Tempo Shain Corp.*, 120 F.3d at 20.  Similarly,

in this case, in ruling for Wilson – on Oracle's Motion to Dismiss no less – the Arbitrator cited

statements made by Wilson at the oral argument which Oracle had no opportunity to rebut:

> *When I inquired of Ms. Wilson on the oral argument of Respondent's motion to dismiss* why she didn't split the sale into two separate parts since FY 2014 was coming to an end, she indicated that she was guided by the assurances of several layers of supervisory personnel that the rule would not be applied in her case and that if any problem arose it would be corrected by a CERT application. . . .  I find that she was entitled to rely on the assurances and guidance of her superiors and should not be penalized for doing so.
>
> A CERT application was filed and fully supported by at least seven levels of supervisory personnel who emphasized her outstanding performance.  That the application was ultimately rejected at the highest management level, I find incomprehensible and contrary to rational business practice.

(Award, p. 3-4) (emphasis added).

    In its Motion to Dismiss, Oracle argued that the purported supervisor "assurances" and its

response to Wilson's CERT application were parol evidence that could not vary the express

terms of the parties' agreement.  (Collins Dec. Ex. 3, pp. 7-8).  If the Arbitrator determined

otherwise, however, she should have denied the motion and allowed for the development of a

full record on the disputed factual issues.  Even Wilson agreed with this approach, arguing in

opposition to Oracle's Motion to Dismiss that Oracle's treatment of her CERT application

"probably requires hearing, and that Oracle, if it chooses to do so, will be entitled to present fact

witnesses as to its rejection of the application."  (Collins Decl. Ex. 4, p. 1).  Yet, the Arbitrator

issued an Award making factual findings regarding the purported supervisor "assurances," and

Oracle's treatment of Wilson's CERT application, without any testimony from Oracle on these

disputed factual issues.  In short, the denial of Oracle's Motion to Dismiss should have resulted

in the scheduling of an evidentiary hearing on disputed factual issues at which Oracle could have

presented evidence disputing the purported "assurances," and could have showing that its

treatment of Wilson's CERT application was not "incomprehensible and contrary to rational

business practices."  (Award, p. 4).   This did not occur.  Instead, the Arbitrator ruled in Wilson's

favor on Oracle's Motion to Dismiss.

    For these reasons, the Award should be vacated under FAA§ 10(a)(3).

## III.    The Award Should be Vacated Because the Arbitrator Manifestly Disregarded the Parties' Agreement

    As explained above, an arbitration award adjudicating a breach of contract claim may be

vacated for "manifest disregard" of the terms of the parties' agreement.  *See Yusuf Ahmed*

*Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997).  Although courts will not

vacate arbitration awards that *interpret* or *apply* contract provisions (however erroneously), they

will vacate an arbitration award "where the arbitrator merely makes the right noises – noises of

contract interpretation – while ignoring the clear meaning of contract terms."  *Yusuf Ahmed*, 126

F.3d at 25 (internal quotation marks omitted)).  Under this standard, vacatur is warranted where

the arbitrator "strays from interpretation and application of the agreement and effectively

dispenses his own brand of industrial justice."  *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,

559 U.S. 662, 671 (2010) (internal citations omitted); *see also In re Marine Pollution Service,*

*Inc.*, 857 F.2d 91, 95 (2d Cir. 1988) (vacating arbitration award where "the arbitrator breached

his responsibility to the parties by importing his notions of equity into the arbitration

proceeding").

    From the face of the Award, it is clear that the Arbitrator neither interpreted nor applied

the relevant contractual provision in Wilson's Individualized Compensation Plan (the "Single

Customer Provision"), but rather refused to enforce it because she found it to be unfair.  (Award, p. 4).  The justificatory terms she used to reach this conclusion – "draconian" and "manifestly unfair" unmistakably show that she was "importing [her] notions of equity into the arbitration proceeding" rather than interpreting a contract term.  *In re Marine Pollution Service, Inc.*, 857 F.2d at 95.  Indeed, there is no interpretation of the Single Customer Provision in the Award; rather, there was only a refusal to apply it ("I find it would be manifestly unfair to apply the draconian 'over 250% quota rule' and I will not do so").  (Award, p. 4).  Accordingly, the Arbitrator manifestly disregarded the terms of the parties' agreement.

## <u>CONCLUSION</u>

For the foregoing reasons, Oracle respectfully requests that the Court vacate the Award and remand the matter to JAMS for further proceedings.  Moreover, because the Arbitrator did not adhere to JAMS arbitration procedures, and because she concluded (without conducting an evidentiary hearing) that she would not enforce a contract provision she found to be "draconian" and "manifestly unfair," Oracle respectfully requests that the case be remanded for resolution before a different arbitrator.

Dated: New York, New York
       January 25, 2017        Respectfully submitted,

                     **SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP

                     By:      *s/ Christopher J. Collins*
                           Christopher J. Collins
                           30 Rockefeller Plaza
                           New York, New York 10112
                           Telephone:  (212) 654-3089
                           Facsimile:   (212) 653-8701
                           ccollins@sheppardmullin.com
                           *Attorneys for Petitioner*