UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ORACLE CORPORATION, petitioner

Case No.1:17-CV-554 (Ramos,J.) -

-against-

FELICIA WILSON, an Individual, respondent
------------------------------------------------------------------ x

<u>Claimant-Respondent's Memorandum in Opposition to Petition to Vacate Award,</u>

<u>and for Correction of the Interest Rate Awarded</u>

    Felicia Wilson, by her attorney Alan M. Goldston, Esq., submits this memorandum in opposition to the petition/motion of Oracle Corp. to vacate the arbitration award of the Hon. Betty Ellerin dated November 1, 2016, which awarded Wilson $257,335.79 plus interest on her claim for sales commissions. Herein Wilson also explains why this Court should correct the rate of interest awarded, to follow governing New York law.

    Reference will also be made to an Exhibit C submitted in the arbitration, which movant has elected not to docket herein. That Exhibit C, a 673 page compilation of the documentation of Ms. Wilson's efforts in connection with the successful transaction between Oracle and the Pearson companies, showed

- Ms. Wilson's 324 formal calendared engagements over a thirty month period, devoted to procuring, enabling and implementing the Pearson transaction, exclusive of the extensive work in ongoing, day to day activities developing presentation materials and proposals, coordinating meeting logistics, seeking approvals, developing contacts, follow-up, administration and ad-hoc communications, and

1

- that Ms. Wilson reviewed, authored or participated in nearly 14,000 emails and other documents in pursuit of the Pearson transaction.

Unless the Court deems this voluminous document necessary, Wilson will refrain at this time from burdening the record with it, particularly as filing it electronically may be impractical. If however, Oracle disagrees with the foregoing synopsis, I respectfully request leave to submit the entirety of the binder (which is that Exhibit C) at the direction of the Court.

As framed by the parties' pleadings, the dispute before the arbitrator on the parties' crossing motions came down to whether a so-called limitation clause, which used terminology strikingly different from any found in Wilson's compensation formula, and was seemingly in conflict with that formula, was applicable to Wilson's earned commissions. Oracle failed to establish that the limitations clause was unambiguously applicable. Moreover, the arbitrator found that language elsewhere in the agreed "Terms and Conditions" seemed to restrict the limitation clause to windfall situations, which this was not. Because, as the parties agreed, there were no negotiations leading to the Compensation Plan, and it had been wholly drafted by Oracle, there was no room for direct testimony as to meaning or subjective intent, and any interpretive doubt had to be resolved against Oracle. It was also undisputed that, but for Oracle's unilateral reduction of Wilson's commissions (predicated solely on the inapposite limitations clause), Wilson's commissions had originally been correctly calculated. Thus, Oracle's unwarranted $257,335.79 deduction had to be reversed, and there was no need for further hearing to so determine.

The award was therefore squarely within the scope of the power of the arbitrator. Against the contention that Oracle was deprived of due process, Oracle *has not demonstrated that there exists any pertinent and material evidence which it was not allowed to present*, nor did Oracle ever specifically alert the arbitrator to the existence of such evidence, so as to justify further hearing. The arbitrator was therefore acting within her discretion in proceeding to the merits, as she notified the parties she intended to do. And, subsequent to the hearing, upon specific inquiry by the arbitrator, the parties both waived objection to her deciding the case on the merits, and Oracle specifically waived opportunity to cross-examine Ms. Wilson. See, JAMS memorandum dated September 15, 2016, Exhibit 1 to Declaration in Opposition. Thus, Oracle has not carried its heavy burden of demonstrating a material violation of its procedural rights affecting the outcome. Factual matters conveniently omitted from, and disregarded by, Oracle's submission on this motion are both material and dispositive of Oracle's contention of procedural unfairness.

POINT I

The Arbitrator decided, on the contract language, that the limitation clause was not applicable.

Oracle contended in the arbitration that the parties' contract "unambiguously" precluded the claim asserted by Ms. Wilson. That was the crux of Oracle's motion for an award in its favor without hearing. Ms. Wilson showed, however, and the arbitrator found, that while the full amount of commissions owing under the "Individualized Compensation Plan" ("ICP") had been correctly calculated, Oracle's subsequent unilateral deduction of $257,335.79 was ostensibly justified by a limitation clause which the arbitrator ultimately found, based on the contract, was

3

inapplicable. That clause, found only in the middle of a footnote in the ICP, states, in pertinent part:

> " …. Commission for any sales credit from a *single customer* in excess of 250% of *quota* in the given year will be calculated at 0.2x of the *tier 1 rate*…."  (Italics added).

Wilson identified at least three different textual inconsistencies between the main body of the ICP and the peculiar language of the limitation clause. The arbitrator found explicit language in the Terms and Conditions which flatly negated application of the limitation clause to this case. .

1) The limitation clause was restricted to sales to a "single customer", but in Ms. Wilson's agreement the term "single customer" was not defined, but the actual contract achieved between Pearson and Oracle explicitly defined Pearson to include dozens of international and domestic entities. See, the sales contract "Amendment No. 4", DKT 7-10 pp. 13-76, and especially ¶(c) at DKT 7-10 p. 16, defining multiple "Customer Entities", and at DKT 7-10, pp. 29-42, the Schedule B, which individually listed hundreds of such "Customer Entities".  Consequently, Ms. Wilson had a good textual basis for believing that Pearson was not a "single customer".

2) The limitation clause was only applicable to sales "in excess of 250% of *quota*", another term not defined in the written agreement, nor used in the contractual compensation formula. There was no documentation that Wilson ever agreed to a "quota" as such.

3) Even if applicable, the limitation clause would have required a determination of a reduced fraction ("0.2X") of a "tier 1 commission", another term neither defined in the compensation agreement, nor used in the portion of that agreement which actually

specified Wilson's commission rate. Oracle contended, however, that this meant that Wilson's *highest* amount of sales would be commissioned at one fifth of the *lowest* rate, a contention which made no sense, and which the arbitrator rejected, especially in light of the unambiguous compensation formula (set forth in the box in the heart of the two-page Individualized Compensation Plan, DKT 7-3, p. 13) which, with mathematical precision, provided different compensation rates for sales at various amounts, and provided an unrestricted "9.42926034%" for all sales over $7,423,700. (using the mathematical notation ">".

4) Finally, as Judge Ellerin found, the contract "Terms and Conditions" expressly provided that the limitation on commissions was intended to avoid windfall awards, which is not this case, as illustrated by the comments of Ms. Wilson's superiors annotating the CERT review application (DKT 7-10 pp. 75-6).

Because the contract was neither negotiated, nor its terms discussed prior to Oracle requiring Wilson to sign what Oracle alone had drafted, under standard rules of construction, any conflict or ambiguity had to be construed against Oracle.

A.  The undisputed facts:

Ms. Wilson, in connection with sales to the Pearson companies, generated commissionable FY 2014 sales of $10,456,055.14. That is what Oracle's calculated that as her contribution to the overall Pearson transaction, as evidenced by the Oracle internal memo docketed herein as DKT 7-9 at p. 7. Ms. Wilson did not dispute that Oracle's allocation of sales credit was correct. See, Oracle's memo at pp. 3 and 4. While Oracle *contended* that these sales were to a "single customer", the actual Pearson contract, cited above, showed otherwise.

Calculated strictly on the basis of the "Applications EPM Rates" set forth in Claimant's FY 2014 Individualized Compensation Plan, the commissions generated by such sales, and originally (and, Claimant submits, correctly) posted to Claimant's account, before Oracle invoked the clause now at issue, were $873,638.10.  <u>That fact was not disputed</u>.  See, Oracle's arbitration memo at p. 4, and email dated August 11, 2014 (more than two months after the May 31 close of FY 2014), from Oracle's "NA-LICENSE-COMP_US" to Ms. Wilson, stating at paragraph 2, in part: "The commission amount that is currently calculating to your statement for this entire [Pearson]order is $873,638.10."

In that same email (Oracle Ex. 3), however, Oracle first notified Ms. Wilson that it would not pay Ms. Wilson that full amount of $873,638.10, but would instead "adjust off" from her account the sum of $257,335.79, contending this was "due to this order being > 250% attainment for a single customer", which Oracle alternatively phrased as "the amount that exceeds 250% of your quota". Oracle Arbitration Exhibit 3.  <u>The fact that $257,335.79 was withheld from what was otherwise earned by Ms. Wilson is not disputed</u>.  But Ms. Wilson did not agree to that withholding, never agreed to any "quota", and denies that Pearson was merely a "single customer".

For further discussion of this point, see, Wilson's memorandum in the arbitration, at DKT 7-10, esp. pp. 4-10.

The Arbitrator could not have properly granted Oracle's request for dismissal.

POINT II

<u>From undisputed facts and the contracts in issue, the Arbitrator properly granted the cross-motion in favor of Wilson</u>

Wilson had requested, essentially as a cross-motion, that the arbitrator determine, on the undisputed facts, that the clause in question was not applicable, and therefore that the amount claimed was owing.  For this, the arbitrator resorted to the text of the contract, wherein the purpose of the disputed clause was explained.  Because no parol would have been admissible on this point, there was no room for resort to additional witnesses on this point.  From explicit language of the contract Terms and Conditions, the arbitrator found that the intended purpose of the clause in question was <u>to prevent an unearned windfall</u>.  The Arbitrator determined, from the documents before her, that the commissions in dispute were not a windfall, hence the disputed clause could not be applied.  It is in that context that the arbitrator's words have meaning: that to apply the disputed clause, in that context would be "incomprehensible", and she would not do so.  On its face, as explained by Judge Ellerin, she was not refusing to apply an applicable contract term, as Oracle insists, but had instead concluded from the face of the contracts and the undisputed facts that the disputed clause was not applicable.

POINT III

Oracle has not satisfied its heavy burden under 9 U.S.C. 10

It is well settled in this Circuit that Federal Arbitration Act's authorization to vacate awards pursuant to 9 U.S.C.S. § 10(a)(4) must be accorded the narrowest reading. <u>*Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007)</u>.  When a party seeks to vacate an arbitration award under § 10(a)(4), the inquiry looks only to whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, and does not consider whether the arbitrator decided the issue correctly. <u>Seed Holdings, Inc. v. Jiffy Int'l AS, 5 F. Supp. 3d 565 (New York Southern District Court,2014)</u>.

Dzanoucakis v. Chase Manhattan Bank, USA, 2009 U.S. Dist. LEXIS 27299, 2009 WL 910691 (E.D.N.Y. Mar. 31, 2009). Thus, a party seeking vacatur of an arbitration award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Section 10(a) of the FAA authorizes a district court to vacate an arbitration award:

> (i) where the award was procured by corruption, fraud, or undue means;
>
> (ii) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (iii) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (iv) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). These Section 10(a) statutory bases represent "egregious departures from the parties' agreed-upon arbitration." *Hall Street Assocs.*, 128 S.Ct. at 1404. Therefore, "the showing required to avoid summary confirmation is high." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987); *see also Nat'l Bulk Carriers, Inc. v. Princess Mgmt. Co.*, 597 F.2d 819, 825 (2d Cir. 1979) ("[O]nly clear evidence of impropriety justifies denial of summary confirmation.")(internal quotations omitted).

Oracle contends, in the abstract, that it was deprived of an opportunity to put on witnesses. But Oracle has, even to this date, never specified what witnesses or other evidence it might have offered. Absent such a showing, the Court cannot assume that there would have been such proof. Had there been such a showing – an offer of proof – surely an experienced jurist like Judge Ellerin would have made provision for it. Instead, when she solicited objections, there were none.

Moreover, the parties had agreed on facts – that the Compensation Agreement was drafted wholly by Oracle, thus barring parol – which would have precluded Oracle from offering witnesses to what the contract meant, or of unexpressed corporate purposes which lay behind the words of the agreement.

Finally, note that, notwithstanding the bar of the parol evidence rule, Oracle's Mathew Feiner was permitted, at the argument of the hearing on the motion, to offer his views. Nonetheless, the actual language of the contract was found to control, leading the arbitrator to find the limitation clause inapplicable to the facts at bar.

Despite Oracle's vague assertions of non-waiver, Oracle never told the arbitrator what proof it might offer, when the arbitrator asked if there was objection to her deciding the case. Thus, despite Oracle's self-serving assertions of not having waived any right, Oracle did nothing to preserve such a right, and particularly did nothing to let the arbitrator know that it had anything probative to present**.**

POINT IV

The Court should correct the erroneous rate of interest

Under Section 11 of the FAA, a district court may modify or correct an arbitration award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

>The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties. 9 U.S.C. § 11. Dzanoucakis, supra.

In this case, the arbitrator awarded interest, from August 11, 2014. Rule 24(g) of the arbitral forum however, required that an award of interest be as "allowed by applicable law". Wilson respectfully submits that the applicable law is the law of New York, prescribing a rate of interest at 9% per annum. See, New York Civil Practice Law and Rules, § 5004. We are aware of some authorities declining to correct interest awards, but not of any such authority where the arbitrator had substituted a different interest rate for the statutory rate, where the parties had not expressly so authorized.

## CONCLUSION

For the reasons set forth above and in the accompanying papers, claimant-respondent Felicia Wilson respectfully submits that the arbitration award should be corrected as to the rate of interest allowed, and as corrected should be confirmed.

>Respectfully,
>
>*Alan M. Goldston*
>
>Alan M. Goldston, Esq.
>Attorney for Felicia Wilson
>164 White Rd.
>Scarsdale, NY 10583
>914-907-2234
>nycounsel@msn.com