UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORACLE CORPORATION,

       Petitioner,

– against –

FELICIA WILSON,

       Respondent.

**OPINION AND ORDER**

17 Civ. 554 (ER)

Ramos, D.J.:

  Oracle Corporation ("Oracle" or "Petitioner") petitions this Court, pursuant to Section 9 of the Federal Arbitration Act ("FAA"), to vacate an arbitration award against it and in favor of Felicia Wilson ("Wilson" or "Respondent"). Oracle alleges that the Arbitrator, Betty Weinberg Ellerin, refused to hear pertinent and material evidence and disregarded a dispositive contractual provision. In Wilson's opposition, she asks the Court to modify the rate of interest applied.

  For the following reasons, Oracle's motion to vacate the arbitration award and Wilson's request to modify the rate of interest are DENIED.

**I. BACKGROUND**

 **A. Factual Background**

  At all relevant times, Wilson was employed by Oracle as a salesperson. Pet. Vacate Arb. Award ¶ 9. She sold Oracle's software products and services to its business customers and was paid a commission on those sales. *Id.*; Mot. Vacate Arb. Award at 2. As relevant to this petition, the amount of her commission was governed by two documents: (1) a fiscal year Incentive Compensation Terms and Conditions, which set forth the compensation terms applicable to

Oracle salespersons generally ("Terms and Conditions"); and (2) a fiscal year Individualized Compensation Plan ("ICP"), which set forth her individualized commission rates. Collins Decl. Ex. 6 ("Final Award") at 1; Collins Decl. Ex. 3 ("Mot. to Dismiss") at 2.

The ICP provides, *inter alia*, that "Commission for any sales credit from a single customer in excess of 250% of quota in the given fiscal year will be calculated at 0.2x of the tier 1 rate" (the "Single Customer Provision"). Collins Decl. Ex. 3 Ex. 1 ("ICP") at 1. It also establishes the "Applications (EPM) Sales Target"[1] at $2,969,480. *Id.* The Terms and Conditions allow for such reductions on commissions in a section entitled "Commissions that Exceed Maximum Commission or Deal Threshold." Terms and Conditions at 5-6. That section states, "Cumulative Sales Credit that exceeds 250% of the acceleration target for Plans that include multi-tier rate schedules may be subject to a modified Commission Rate as detailed in the Employee's Individualized Compensation Plan." *Id.* It further explains that the reduced commission rates "have been established to ensure reasonable compensation is paid, especially in the case of unplanned windfalls and unexpected gains and that earnings reflect a reasonable valuation of the Employee's contribution toward a transaction." *Id.* at 5. In other words, the apparent purpose of the foregoing provisions is to ensure that genuine effort on the part of salespersons is adequately rewarded while at the same time preventing excessive commissions for relatively modest efforts.

---

[1] The Terms and Conditions define "Sales Target" as "the sales goal set forth in the Individualized Compensation Plan." Collins Decl. Ex. 3 Ex. 2 ("Terms and Conditions") at 80. Oracle argued during the arbitration proceeding that the Applications (EPM) Sales Target is the same as a "quota." Mot. to Dismiss at 3. Wilson stated that "Sales Target" was a specifically defined term under the Terms and Conditions that is not interchangeable with the term "quota." Collins Decl. Ex. 4("Opp. Mot. to Dismiss") at 5-6.

In the fiscal year ending in May 31, 2014, Wilson's commissionable sales totaled $10,456,055.14. Final Award at 1. The entirety of that amount was to a single customer,[2] Pearson, Inc. ("Pearson"), an education publication and services company. *Id.*; Mot. to Dismiss at 4. Wilson had been working on the Pearson sale for 30 months, and avers that she attended 324 formal calendared engagements, and reviewed, authored or participated in nearly 14,000 emails and other documents for the sale. Opp. Pet. Vacate at 1-2. Wilson claims that her supervisors assured her multiple times that the Single Customer Provision would not apply to the Pearson sale. Wilson Aff. ¶ 5. In July 2014, her commission on the Pearson sale was calculated at $873,638.10. Opp. Pet. Vacate at 6. However, on August 11, 2014, Oracle advised Wilson in an email that it would be deducting $257,355.79 from that amount pursuant to the Single Customer Provision. Wilson Aff. at ¶ 2. Wilson states that her supervisors urged her to initiate an internal Compensation Review ("CERT") to appeal this decision. *Id.* at ¶ 5.

On August 20, 2014, Wilson filed a CERT application online. Opp. Mot. to Dismiss at 9, Ex. B. The application was recommended for approval throughout seven levels of review, but it was ultimately rejected by the highest level of management. *Id.*

**B. Procedural History**

In or around December 2015, Wilson filed an arbitration claim against Oracle pursuant to the Employment Agreement & Mutual Agreement to Arbitrate ("Arbitration Agreement") that requires her to submit all "claims arising out of or related to [her] Oracle employment" to arbitration. Pet. Vacate Arb. Award ¶¶ 10, 12. The Arbitration Agreement further requires all arbitration proceedings to be conducted pursuant to the FAA, and the Judicial Arbitration &

---

[2] Wilson disputes that Pearson should be considered a single customer because Pearson is a "compound group customer" that encompasses its many affiliates. Opp. Mot. to Dismiss. at 4.

3

Mediation Services ("JAMS") Employment Arbitration Rules and Procedures ("JAMS Rules"). *Id.* at ¶ 11.

On or around April 18, 2016, Wilson submitted a Statement of Claim in the arbitration proceeding, alleging breach of contract and breach of the covenant of good faith and fair dealing in processing Wilson's CERT. *Id*. at ¶ 12; Collins Decl. Ex. 2 at 3. On May 20, 2016, Oracle filed a Motion to Dismiss Based on Express Contractual Terms ("Motion to Dismiss") pursuant to JAMS Rule 18, which permits a party to request summary disposition of a claim or issue upon notice to the other interested parties.[3] Pet. Vacate Arb. Award at ¶ 13. In its Motion to Dismiss, Oracle contended that Wilson's commission on the Pearson sale was subject to the Single Customer Provision and that her compensation was properly calculated in accordance with that provision. *See generally* Mot. to Dismiss. On or around June 11, 2016, Wilson filed her Opposition to the Motion to Dismiss, arguing that the Single Customer Provision did not apply because (1) Pearson was not a single customer, (2) there was no agreed upon "quota" under the Single Customer Provision, and (3) the term "tier 1 rate" in the provision at issue is ambiguous at best. Opp. Mot. to Dismiss at 3. Importantly, she also made a cross-motion for a summary award, requesting that the Arbitrator rule in her favor based on the undisputed facts. *Id.* at 1, 9.

On August 30, 2016, the Arbitrator held oral argument on the Motion to Dismiss ("Oral Argument"). Pet. Vacate Arb. Award ¶ 16. Counsel for both sides attended the Oral Argument, as well as Wilson, and Matt Feiner ("Feiner"), an Oracle in-house counsel. Goldston Decl. ¶ 3(a); Collins Supp. Decl. ¶ 4. Several days prior to the Oral Argument, the Arbitrator denied Wilson's request to present witness testimony. Pet. Vacate Arb. Award ¶ 16. The Arbitrator

---

[3] JAMS Rule 18 provides that "[t]he Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion."

stated that she would only hear attorney arguments, but allegedly noted that if she denied the motion, she would schedule an evidentiary hearing. *Id.* However, during the Oral Argument[4], the Arbitrator asked Wilson questions, and Wilson answered, providing what Oracle refers to as unsworn testimony.[5] *Id.* at ¶ 17. Oracle claims that it did not receive any notice that the Arbitrator was going to hear such unsworn testimony. *Id.* However, Oracle did not object to the questioning or cross-examine Wilson. *Id.*; Goldston Decl. Ex. 1.

After the Oral Argument, by letter dated September 12, 2016, Oracle wrote to the Arbitrator, stating that the case should be decided on the contractual language in the ICP, and that any evaluation of the underlying business purpose behind the Single Customer Provision is irrelevant given the express contractual terms. Collins Supp. Decl. Ex. 1. Nevertheless, it offered to present witness testimony on the business purpose behind the Single Customer Provision if the Arbitrator thought it necessary since it had not provided any fact witnesses at Oral Argument. *Id.*

On September 15, 2016, the Arbitrator conducted a conference call ("Conference Call"), in which counsel for both parties participated. Goldston Decl. Ex. 1. Notes of the call taken by a JAMS administrator who was also on the call shows that the Arbitrator "asked each side to raise any objections to issue a decision based on [Wilson]'s in person testimony at the August 30th in-person hearing and the papers submitted to the Arbitrator." *Id.* Counsel for Wilson did not object. *Id.* He stated that the Arbitrator should decide on the submitted papers if she finds the papers to be sufficient, and that the Arbitrator should conduct an evidentiary hearing if she

---

[4] The Oral Argument appears not to have been recorded or transcribed, but the parties have provided declarations describing statements made at the proceeding.

[5] Wilson contends that the Arbitrator also heard testimony from Feiner, characterizing Feiner as an Oracle executive responsible for Oracle's employee contract management and its alleged policies in connection therewith, but Oracle claims that Feiner had only spoken at Oral Argument in his capacity as Oracle's attorney, not as a fact witness. Goldston Decl. ¶ 3(a); Wilson Aff. ¶ 4; Collins Supp. Decl. ¶ 4.

5

determined that the contract was ambiguous. *Id.* The notes of the Conference Call further state that "[Oracle]'s counsel waived the opportunity to cross examine." *Id.* The Arbitrator stated that she would issue her decision 60 days from August 30, 2016. *Id.*

On November 1, 2016, JAMS issued the Final Award, denying Oracle's Motion to Dismiss and granting Wilson's cross-motion for a summary award, awarding Wilson the remaining balance of her commission prior to the application of the Single Customer Provision—$257,335.79—plus interest at 3% per annum "in light of prevailing money market conditions." Pet. Vacate Arb. Award at ¶ 18; Final Award at 4. In granting the award, the Arbitrator refused to apply the Single Customer Provision to the Pearson sale. *Id.* As the award makes clear, the Arbitrator did not interpret the Single Customer Provision in isolation, but read it in conjunction with the Terms and Conditions, which provided that commission modifications have been "established to ensure reasonable compensation is paid, . . . and that earnings reflect a reasonable valuation of the Employee's contribution toward a transaction." Terms and Conditions at 5; *see* Final Award at 2-3. Based on the "voluminous uncontradicted documentary evidence [that] overwhelmingly demonstrates that [Wilson's] work on [the Pearson sale] was extraordinary," the Arbitrator determined that the full pre-modified commission on the Pearson sale would not have given Wilson an "unplanned windfall" as that term is contemplated in the Terms and Conditions. Final Award at 2-3. Specifically, she noted that the sale involved over 2 years of intensive effort. *Id.* at 3. In fact, the Arbitrator noted that Wilson's superiors had also interpreted the Single Customer Provision to be inapplicable to her extensive work on the Pearson sale. *Id.* Thus, she determined that the Single Customer Provision should not have been invoked to reduce Wilson's commission on the Pearson sale. *Id.* at 4.

On January 25, 2017, Petitioner filed the instant motion to vacate the arbitration award. Oracle argues that the Arbitrator failed to conduct an evidentiary hearing and disregarded the parties' contractual agreement. Doc. 5. On February 24, 2017, Wilson filed her opposition to the instant motion and asserted that the award should be confirmed, except that the Arbitrator improperly fixed a prejudgment interest of 3% instead of the applicable New York statutory rate of 9%. Doc. 16.

## II. LEGAL STANDARD

The FAA provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). District courts "treat a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (internal quotation marks omitted). The award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). "The arbitrator's rationale for an award need not be explained, and . . . [o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *Id*. (internal quotation marks omitted). Confirmation of an arbitration award is thus "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *Id.* (internal quotation marks omitted). This "severely limited" review promotes the twin goals of arbitration, namely to settle disputes efficiently and avoid long and

7

expensive litigation. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citations omitted).

Conversely, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted). The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Thus, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Under the FAA, a court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or *in refusing to hear evidence pertinent and material to the controversy*; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (emphasis added). In addition, as "judicial gloss" on these specific grounds for vacatur, the Second Circuit has held that "the court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted).

## III. DISCUSSION

### A. Fundamentally Fair Hearing

Under Section 10(a)(3) of the FAA, vacatur is warranted if, *inter alia*, the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy. 9 U.S.C. § 10(a)(3). Courts have interpreted Section 10(a)(3) to permit vacatur only if the misconduct amounts to violation of "fundamental fairness." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). "Arbitral misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *In re Cragwood Managers, L.L.C. (Reliance Ins. Co.),* 132 F.Supp.2d 285, 287 (S.D.N.Y. 2001) (internal quotations marks and modifications omitted). Arbitrators must "give each of the parties to the dispute an adequate opportunity to present its evidence and argument," but need not follow "all the niceties observed by the federal courts" such as the Federal Rules of Civil Procedure or the Federal Rules of Evidence, nor hear all of the evidence proffered by a party. *Tempo Shain Corp.*, 120 F.3d at 20 (citations omitted); *see also Glob. Scholarship All. v. Wyckoff Heights Med. Ctr.*, No. 09 Civ. 8193 (RMB), 2010 WL 749839, at *2 (S.D.N.Y. Feb. 24, 2010). There is also no bright line rule that requires arbitrators to conduct oral hearings. *ST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter.*, No. 15 Civ. 4983 (AT), 2016 WL 5475987, at *4 (S.D.N.Y. June 6, 2016) (citations omitted). To demonstrate arbitral misconduct, the challenging party must show that his "*right to be heard has been grossly and totally blocked*," *Stifel, Nicolaus & Co. v. Forster*, No. 14 Civ. 6523 (RWS), 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (internal quotation marks omitted) (emphasis added), and that this exclusion of evidence prejudiced him, *Rai v. Barclays Capital Inc.*, 739 F. Supp. 2d 364, 372 (S.D.N.Y. 2010), *aff'd,* 456 F. App'x 8 (2d Cir. 2011).

9

Oracle argues that the Arbitrator refused to hear pertinent and material evidence when she issued the Final Award in response to its Motion to Dismiss. It asserts that denial of a motion to dismiss must be followed by discovery and an evidentiary hearing, and thus, issuance of an award in Wilson's favor was a refusal to permit such discovery and hearing. However, as Oracle concedes, there were two pending motions before the Arbitrator: its Motion to Dismiss and Wilson's cross-motion for summary disposition. Pet. Vacate Arb. Award ¶¶ 14-15; *see* Opp. Mot. to Dismiss at 1, 9. Specifically, Wilson requested "an award in her favor [on the contract claim], if that can be determined *without hearing*." Opp. Mot. to Dismiss at 1 (emphasis added). Wilson further stated that even though her alternative claim of breach of the covenant of good faith and fair dealing based on her rejected CERT application may require a hearing, that issue "may never [] be reached *unless* Oracle's contract position is sustained." *Id.* (emphasis added). Oracle did not object to Wilson's filing of the cross-motion nor does it argue that her cross-motion prior to a hearing was invalid for any reason. In fact, JAMS Rule 18 permits one party to submit a motion for summary disposition of a particular claim or issue.

Oracle nonetheless asserts that the language of the Final Award demonstrates that it was issued only in response to its Motion to Dismiss, and not in response to Wilson's cross-motion. Oracle contends that the Arbitrator's decision was not rooted in any of the three counter-arguments proffered by Wilson in her Opposition to the Motion to Dismiss, which also served as her cross-motion, and that the Final Award does not specifically mention Wilson's cross-motion. This argument is unavailing. As discussed above, the Second Circuit has held that an arbitrator's rationale for an award "need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *D.H. Blair & Co., Inc.*, 462 F.3d at 110 (quoting *Barbier*, 948 F.2d at 121). A ground for the Final Award can be easily

inferred from the record here. In addition to the three counter-arguments Wilson made in her Opposition to the Motion to Dismiss, she generally requested that the Arbitrator issue an award in her favor based on the undisputed facts. *See* Opp. Mot. to Dismiss at 1-3, 9. Specifically, the facts she referenced, which she supported with more than 600 pages of documentary evidence, included the 324 formal calendared engagements and more than 14,000 emails she participated in for the Pearson sale over a 30 month period, explicit assurances from her supervisors, and favorable determinations through seven levels of CERT review that the Single Customer Provision would not apply to the Pearson sale. *Id.* at 2-3, 8-9. Thus, it can be inferred that the Arbitrator granted the Final Award on Wilson's contract claim based on what she determined to be uncontroverted evidence presented by Wilson.[6] Final Award at 3-4.

There is also no evidence on the record which demonstrates that the Arbitrator prevented Oracle from presenting pertinent and material evidence before she issued the Final Award. Courts have held that a party is not denied a fundamentally fair hearing if it did not avail itself of the opportunity to be heard by proffering further evidence, seeking discovery, or requesting an evidentiary hearing. *See Inficon, Inc. v. Verionix, Inc.*, 182 F. Supp. 3d 32, 41 (S.D.N.Y. 2016), *appeal withdrawn* (July 15, 2016) (holding that the petitioner was not denied a fundamentally fair hearing when it made the strategic choice not to present further evidence); *Capgemini U.S. LLC v. Sorensen*, No. 04 Civ. 7584 (JGK), 2005 WL 1560482, at *7 (S.D.N.Y. July 1, 2005) ("Capgemini cannot now argue that it was denied a fundamentally fair hearing when it did not avail itself of the opportunity to be heard"); *Matter of Arbitration between Carina Int'l Shipping*

---

[6] Oracle further attempts to show that even Wilson had expected that there would be a hearing by noting that Wilson's counsel, during the Conference Call, requested a hearing should the Arbitrator find that the contract was ambiguous. This argument also fails. The requested hearing was specifically conditioned on a finding that the contract was ambiguous, thereby preventing a decision on the submitted papers. The Arbitrator did not so find. As the Final Award makes clear, she interpreted the contracts without reference to parol evidence. *See* Final Award.

11

*Corp. & Adam Mar. Corp.*, 961 F. Supp. 559, 567 (S.D.N.Y. 1997) ("By its own tactical choice, Adam waived the right to argue that the awarding panel committed misconduct under 9 U.S.C. § 10(a)(3) by not re-opening the evidentiary hearings"). JAMS Rule 27(a) also provides that failure to object to a violation of or failure to comply with the JAMS Rules will be deemed waiver of any objections.[7]

The record shows that Oracle made a strategic decision not to rely on language aside from the Single Customer Provision; a position that it reiterated in its September 12, 2016 letter to the Arbitrator. *See* Collins Supp. Decl. Ex. 1. Indeed, the record shows that in response to Wilson's more than 600 pages of documentary evidence, Oracle did not proffer any documents. It merely relied on one document that Wilson had already submitted, an amendment to the contract between Oracle and Pearson, to dispute Wilson's assertion that Pearson was not a single customer. Collins Decl. Ex. 5 at 1-2. In addition, the only evidentiary request it made to the Arbitrator was to present testimony on the business purpose behind the Single Customer Provision if the Arbitrator thought it necessary, which it simultaneously admitted was "irrelevant given the express contractual terms."[8] Collins Supp. Decl. Ex. 1.

Furthermore, during the Conference Call, Oracle expressly turned down an opportunity to object to the procedure the Arbitrator proposed to follow, the same procedure which Oracle now decries as improper. *See* Goldston Decl. Ex. 1. The notes of the Conference Call reflect that the Arbitrator specifically asked "each side to raise any objections to issue a decision based on

---

[7] JAMS Rule 27(a) provides, "If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship."

[8] There is no arbitral misconduct where arbitrators have refused to hear evidence that is irrelevant or cumulative. *GFI Sec. LLC v. Labandeira*, No. 01 Civ. 00793(JFK), 2002 WL 460059, at * 6 (S.D.N.Y. Mar. 26, 2002) ("An award cannot be set aside because of an arbitrator's refusal to hear cumulative or irrelevant evidence.") (citation omitted).

12

[Wilson]'s in person testimony at the August 30th in-person hearing and the papers submitted to the Arbitrator." *Id.* The notes do not show that Oracle made any objections, but rather, state that Oracle's counsel waived the opportunity to cross-examine Wilson.[9] *Id.* On these facts, Oracle cannot credibly assert that its "right to be heard has been grossly and totally blocked." *Stifel, Nicolaus & Co.*, 2015 WL 509684 at *5.

Oracle has also failed to show that it was prejudiced by the alleged exclusion of evidence as it does not identify the evidence that it would have presented, or why that evidence would have caused the Arbitrator to resolve the dispute in its favor. Courts have found that such lack of particularity defeats a claim for vacatur. *NYKCool A.B. v. Pac. Fruit, Inc.*, 507 F. App'x 83, 88-89 (2d Cir. 2013) (refusing to vacate the arbitration award where, *inter alia*, there was no identified reason why an evidentiary hearing on the issue of joint and several liability would have helped the arbitrators resolve the issue in the challenging party's favor); *see also ST Shipping & Transp. PTE, Ltd.*, 2016 WL 5475987 at *5 (refusing to vacate the arbitration award under Section 10(a)(3) and noting that petitioner failed to identify with any particularity what evidence further discovery and a hearing would have adduced). Accordingly, the Court finds that vacatur under Section 10(a)(3) is unwarranted.

### B. Contractual Interpretation

A court can only vacate an award for manifest disregard of a commercial contract when the arbitral award "contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the

---

[9] Oracle argues that it did not object to Wilson's testimony because, like the extra-contractual evidence in her papers, matters outside the pleadings are typically not considered on a motion to dismiss, and thus, no objection would have been necessary. However, as discussed above, there was also a pending cross-motion for a summary award premised on what Wilson purported were undisputed facts, which she was allowed to bring under JAMS Rule 18.

contract." *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 222 (2d Cir. 2002). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015) (quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987)). Therefore, Oracle must overcome an extremely high hurdle and establish that the Arbitrator was not even arguably construing or applying the contracts at issue, and that the award so far departs from the contracts that it is not even arguably derived from them.

The Court easily concludes that the Arbitrator was construing and applying the contracts, and that her interpretation of the Single Customer Provision derived from the contractual terms. From the face of the Final Award, it is evident that the Arbitrator examined the Single Customer Provision not in isolation, but in conjunction with the section of the Terms and Conditions entitled "Commissions that Exceed Maximum Commission or Deal Threshold."[10] Final Award at 2-3. That section specifically provided that provisions modifying the commission rate—such as the Single Customer Provision—were established for a specific purpose, namely "to ensure reasonable compensation is paid, especially in the case of unplanned windfalls and unexpected gains and that earnings reflect a reasonable realization of the Employee's contribution toward a transaction." *Id.* Based on this language, the Arbitrator construed the Single Customer Provision to apply only if the commission on the Pearson sale would result in Wilson receiving unreasonably excessive compensation.

---

[10] Thus, the Arbitrator did precisely what she was required to do—she construed the two contracts in order to "give full meaning and effect to all of its provisions." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted).

14

After thus construing the Single Customer Provision, the Arbitrator examined Wilson's contribution to the Pearson sale. The Arbitrator found that "the voluminous uncontradicted evidence overwhelmingly demonstrates that [Wilson's] work on [the Pearson sale] was extraordinary." *Id.* at 3. She noted that the undisputed facts demonstrates that the commission was not "unplanned" or unexpected because Wilson's work on the Pearson sale involved over 2 years of "intensive effort," and that she received multiple assurances from her supervisors that the Single Customer Provision would not be read to apply to the sale. *Id.* Based on these facts, the Arbitrator determined that Wilson's extensive efforts were proportional to the pre-modification commission under the ICP. *Id.* at 3-4.

Accordingly, the Court cannot find that this analysis comes close to a manifest disregard on the part of the Arbitrator of the contracts at issue, and will not vacate the award merely because Oracle disagrees with the Arbitrator's interpretation. The Court finds that the award validly applies the Single Customer Provision, and declines to vacate it.

**C. Interest Rate**

Wilson also requests that the Court modify the amount of the award pursuant to Section 11 of the FAA to reflect a prejudgment interest at the statutory rate of 9% under New York law instead of the 3% awarded by the Arbitrator. Section 11 allows a district court to modify or correct an arbitration award for any of the following mistakes:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

15

>    (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. Wilson does not specify which subsection it is seeking the modification under, nor provide any case law supporting her position. Oracle states that JAMS Rule 24(g) gives the Arbitrator discretion to determine the applicable interest rate "at such rate and from such date as the Arbitrator may deem appropriate."

The Court finds that none of the subsections of Section 11 allow the Court to adjust the interest rate. Under Section 11(a), a court can only modify the calculation of an award if there is an evident material miscalculation of figures as a result of "some careless or obvious mathematical mistake." *Gold v. Opera Sols., LLC*, No. 16 Civ. 8121 (JPO), 2017 WL 3267770, at *3 (S.D.N.Y. Aug. 1, 2017) (citation omitted). There is no such evident material miscalculation. Rather, the Final Award provides that the Arbitrator is applying a 3% interest "in light of prevailing money market conditions" pursuant to JAMS Rule 24(g). Final Award at 4. As Oracle asserts, JAMS Rule 24(g) allows the Arbitrator to fix interest "at such rate and from such date as the Arbitrator may deem appropriate."

Section 11(b) is also inapplicable since there is no contention that the Arbitrator had awarded upon a matter not submitted to her. Lastly, Section 11(c) is "limited only to matters of form not affecting the merits of the controversy and 'does not license the district court to substitute its judgment for that of the arbitrators.'" *LLT Int'l, Inc. v. MCI Telecomms. Corp.,* 69 F.Supp.2d 510, 517 (S.D.N.Y. 1999) (quoting *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir. 1980)); *see also Hartford Fin. Holdings, Inc. v. Singer*, No. 08 Civ. 2459 (PKC), 2010 WL 1838843, at *5 (S.D.N.Y. May 4, 2010). Were the Court to modify the interest rate to reflect the New York statutory rate, it would be replacing the judgment of the

Arbitrator, that the interest rate should be determined by the prevailing money market conditions, with its own judgment.

Moreover, courts in this Circuit have found that a district court may not provide pre-judgment interest if the Arbitrator's award is silent on such interest. *Moran v. Arcano,* No. 89 Civ. 6717 (CSH), 1990 WL 113121, at *2 (S.D.N.Y. July 27, 1990) (quoting *In re Gruberg,* 143 A.D.2d 39, 531 N.Y.S.2d 557, 558 (1988)). Courts have also rejected motions to vacate or modify arbitration awards that have failed to provide pre-judgment interest. *See Nicoletti v. E.F. Hutton & Co., Inc.,* 761 F.Supp. 312, 315 (S.D.N.Y. 1991) (arbitrator's failure to provide prejudgment interest was not grounds for vacatur); *Rosenblum v. Aetna Casualty & Sur. Co.,* 81 A.D.2d 731, 439 N.Y.S.2d 482, 483 (3d Dep't 1981) (refusing to modify arbitrator's award which did not include prejudgment interest). In light of such case law, the Court finds that modification of the interest rate is also unwarranted.

## IV.  CONCLUSION

For the reasons stated above, Petitioner's motion to vacate the arbitration award and Respondent's request to modify the interest rate are DENIED.

The Clerk of the Court is respectfully directed to terminate Doc. 5 and close the case.

It is SO ORDERED.

Dated:   August 22, 2017
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.